**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 4:22-cr-00461-RWS/SPM |
| ) | |
| DONNA THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

Now Comes Defendant, DONNA THOMPSON through counsel, STEPHEN C. WILLIAMS, and submits the following Sentencing Memorandum in Support of a sentence of five years of probation which includes a period of home detention. While Ms. Thompson recognizes the seriousness of her offense, there is ample justification, under the factors set forth in 18 U.S.C. § 3553(a), for non-custodial sentence in this case.

Ms. Thompson is a 76-year-old, retired mother of two adult children. She spent a lifetime as a devoted mother and spouse while pursuing a successful career with the probation and parole office of the State of Missouri. Until the events of this case, she had never run afoul of the law. Rather, Donna has been a model citizen until upending her life through an uncontrolled gambling addiction.

**I.      Ms. Thompson's Personal History and Characteristics**

Despite the publicity surrounding this offense, Donna maintains the support of a loving network of family and friends. These relationships suggest that Donna's conduct in this case is an aberration in an otherwise compassionate and conscientious individual. Donna's brother Robert Butler says that "from an early age, she instilled a strong moral code that continues to

serve me today. We have maintained a cordial and loving sibling relationship my entire life. When our mother died in 1989, Donna was a source of strength and stability during the darkest days of my life." Ex. 1, Letter of Dr. Robert Butler. Reflecting on Donna's relationship with her nuclear family, he also writes "[i]n her limited spare time of caring for her lifelong disabled Vietnam veteran husband, she raised two children that are productive and contributing members of society. She is also the much loved grandmother of three adolescent granddaughters.  She is actively involved in their academic and social development." *Id.*  Similarly, Donna's son-in-law states "I could not have asked for a better mother-in-law and loving grandmother for my two girls than I have in Donna Thompson." Ex. 2, Letter of Eric Agnew.  And that "my own mother passed away in August of 2022 and she has been instrumental in my healing and is the world to her granddaughters." *Id.*

Donna has also been a valued friend and employee. William Potter, a former District Supervisor with Missouri Probation and Parole writes that Donna impressed him "with her knowledge, her ability to motivate others, sound judgment, and compassion for staff and offenders who reported to the office." Ex. 3, Letter of William Potter.  They remain friends to this day. *Id.*  Patricia Brucker, another former Missouri Probation and Parole Officer, says that Donna "was an exceptional employee as both clerical support and as a supervisor.  She was often called upon to assist other districts when the need arose and did so professionally.  Ms. Thompson was conscientious and completed her work thoroughly and well." Ex. 4 – Patricia Brucker Letter.  She also remains friends with Donna to this day. *Id.*

Donna is a good person who did a bad thing.  She is extremely remorseful and embarrassed by her actions.  So, what accounts for Donna's aberrant behavior demonstrated in this case? A disease.

Donna's gambling addiction took hold over 20 years ago. Not surprisingly, it seems to have coincided with her diagnosis and treatment for depression. Gambling addiction is a disease[1] and Donna's addiction is severe. In the last 11 years alone, she has gambled away hundreds of thousands of dollars. In 2016, her uncontrolled gambling led her to begin stealing from her employer. While not absolving her of responsibility, this severe addiction explains why an otherwise upstanding citizen, excellent employee, and loving mother, would commit a fraud of this magnitude.

As explained by one of her fellow attendees at Gambler's Anonymous, this disease is no different from that of a drug or alcohol addiction. Ex. 5 – Kathy S. Letter. Gambling provides an escape from the rough and tumble of reality that pervades everyday life. *Id.* And "at times folks cannot really pinpoint why they gambled, but just want to escape life." *Id.* In Donna's case, when she started, it just seemed like recreation. But the signs were there. She lied to her husband about the extent of her gambling. And once her husband died in 2006, the wheels came off and her addiction progressed to uncontrollable levels.

To her credit, Donna began attending Gamblers Anonymous after losing her job, months before being charged in the instant offense. She has attended twice a week and continues to do so. To be sure, the meetings have helped her realize the extent and impact of her addiction. But they also help her to realize her continued value as a human being. As someone who is loved and supported by her family and friends. Should the Court impose a sentence of probation in this case, Donna would continue to attend meetings with an eye towards furthering her recovery.

---

[1] American Psychiatric Association, Gambling Disorder, DSM-5, accessed online at https://www.psychiatry.org/patients-families/gambling-disorder/what-is-gambling-disorder

## II. Deterrence, Protecting the Public, and Avoiding Unwarranted Sentencing Disparities

Ms. Thompson is aware the Court must also take into account the need to protect the public and provide deterrence. On this issue, however, the potential for Donna to reoffend is negligible. Donna is 76 years old. Statistically, that alone makes it unlikely she will reoffend.[2] She no longer drives, and she does not even get on the internet. Unlike her co-defendant, all her gambling was done at the physical location of a casino. Donna has broken both of her shoulders in the last five years and recently suffered another fall due to vertigo. PSR, ¶ 55. She no longer has access to municipal funds and is benefitting from participation in Gamblers Anonymous. She simply no longer poses a threat to the community. The need for specific deterrence is non-existent in her case.

In its Sentencing Memorandum, the government understandably spends significant time emphasizing the seriousness of this offense and the need to provide general deterrence to others. Govt. Sent. Memo, Doc. 74. No doubt the offense is serious. But put in context, a sentence of probation for five years is appropriate in this case.

While Donna may never be able to pay back all that is owed, her modest financial resources will nevertheless allow her to pay back a significant sum over time. Donna understands that she has wronged Flordell Hills and its citizens. She has suffered embarrassment within her circle of family and friends as well as public humiliation. While the defense does not suggest this is undeserved, the punitive effect of this conviction on an elderly person who has led an otherwise exemplary life is manifest. To say nothing of the fact that she will continue to fall under the supervision of the court and U.S. Probation, with significant restrictions on her

---

[2] U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12, ex. 9 (2004), accessed at https://www.ussc.gov/sites/default/files/pdf/research-and publications/researchpublications/2004/200405_Recidivism_Criminal_History.pdf

4

movement and activities.

The defense also recognizes the Court must endeavor to avoid unwarranted sentencing disparities. Again, the government suggests that a sentence of probation in this case is inappropriate in part due to the sentence this Court imposed in a similar case. Govt Sent. Mem., Doc. 74 at p. 3. In that case, this Court imposed a sentence of 18 months on a defendant who stole $315,000. *Id.; see also* U.S. v. Ray, 20-CR-701-RWS, docs. 30 (Plea Agreement) & 63 (Judgment).

Ms. Thompson is at slight disadvantage in evaluating the similarity between herself and the defendant in that case- Ms. Ray. However, there appear to be at least two important differences between Ms. Thompson and Ms. Ray. First, Ms. Ray stole more money than Donna did. In this case, Donna acquired almost $160,000 through her unlawful actions. Ms. Ray stole twice as much money. This factor distinguishes Donna from both Ms. Ray, and Donna's codefendant Ms. Woodson. It is also reflected in the lower guidelines calculation for Donna - two levels less that of both Ms. Woodson and Ms. Ray. While $160,000 is still a significant amount of money, it's about 25% of the overall theft from Flordell Hills.

Additionally, Donna (and Ms. Woodson) can also be distinguished from Ms. Ray in that this offense was clearly driven by the Donna's addiction, a disease. Again, while addiction does not excuse Donna's behavior – or absolve her from punishment – it is a legitimate factor in mitigation that warrants a difference in treatment. Donna's sentence should be less severe because her conduct and personal characteristics warrant a less severe sentence.

The defense is mindful of the courts concern for providing general deterrence as expressed in its sentencing of Ms. Ray. Govt. Sent. Memo, Doc. 74 at 3. And should the Court find that it must sentence Donna to a term of imprisonment, the defense submits that a term of no

5

more than 12 months and a day would sufficiently address the purposes of sentencing as set forth in 18 U.S.C. 3553(a).  Anything more would be greater than necessary to accomplish those goals.  But the defense nevertheless maintains that a sentence of five years of probation – that includes a term of house arrest – will sufficiently punish Ms. Thompson, while at the same time recognizing her otherwise exemplary character that she demonstrated for the vast majority of her life.

        Respectfully Submitted,

/s/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
Swilliams@kuehnlawfirm.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on May 10, 2023, I electronically filed the SENTENCING MEMORANDUM with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/STEPHEN C. WILLIAMS
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL   62220
Telephone: (618) 277-7260
Fax: (618) 277-7718
Swilliams@kuehnlawfirm.com